# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHERYL SULLIVAN, : | |
| : | |
| *Plaintiff*, : | |
| : | |
| v. : | Civil No. 3:17-cv-1524 (MPS) |
| : | |
| NANCY A. BERRYHILL, ACTING : | |
| COMMISSIONER OF SOCIAL : | |
| SECURITY : | |
| : | |
| *Defendant*. : | |

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

In this appeal from the Social Security Commissioner's denial of benefits, Cheryl Sullivan argues that the Administrative Law Judge ("ALJ") (1) violated the treating physician rule; (2) made unsupported findings at steps two and three of the analysis of disability claims; (3) insufficiently developed the record and misconstrued the evidence; (4) made unsupported vocational findings; and (5) did not adequately address Ms. Sullivan's claims of pain.

I find that the ALJ erred in several respects. First, the ALJ improperly applied the treating physician rule to Dr. Caminear's July 23, 2014 Physical Residual Function Capacity Statement. Second, the ALJ did not adequately develop the record as to the statement by the unknown doctor. Third, the ALJ did not adequately address whether Ms. Sullivan's neuropathy was a severe impairment at step two and failed to consider whether that condition satisfied the requirements of listing 11.14 at step three. Each identified error is related to the ALJ's assessment of diabetic neuropathy. I do not reach Ms. Sullivan's remaining claims.

1

I.  **Procedural History, Facts, and Legal Standards**

I assume the parties' familiarity with Ms. Sullivan's medical history (summarized in a stipulation of facts filed by the parties, ECF No. 24-1, which I adopt and incorporate herein by reference), the ALJ's opinion, the record, and the five sequential steps used in the analysis of disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

II. **Standard of Review**

"A district court reviewing a final . . . decision pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). As such, the Commissioner's decision "may be set aside only due to legal error or if it is not supported by substantial evidence." *Crossman v. Astrue*, 783 F. Supp. 2d 300, 302–03 (D. Conn. 2010). The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citation and quotation marks omitted). Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." *Id.*

III. **Discussion**

A. **Treating Physician Rule**[1]

Ms. Sullivan argues that the ALJ failed to assign controlling weight to the opinions of Dr. Caminear in violation of the treating physician rule. ECF No. 24-2 at 1-7. This rule generally

---

[1] For claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). Since Ms. Sullivan filed her claim on February 21, 2014, however, the treating physician rule applies. *See Claudio v. Berryhill*, 2018 WL 3455409 at *3 n.2 ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule under the earlier regulations.").

2

requires "deference to the medical views of a physician who is engaged in the primary treatment of a claimant." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). More specifically, an ALJ must ascribe controlling weight to a treating physician's opinion "so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). If, however, "the treating physician issued opinions that are not consistent with other substantial evidence in the record," then the ALJ may give them less than controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curium). "To override the opinion of the treating physician, we have held that the ALJ must explicitly consider, *inter alia*, (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (internal quotation marks, citations, and alterations omitted). "After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion. The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Ibid*. (internal quotation marks, citations, and alterations omitted).

    Dr. Caminear had been treating Ms. Sullivan for nearly a decade before she filed her claim. ECF No. 24-1 at 2-16. Ms. Sullivan argues that the ALJ erred by giving "great weight" to his October 30, 2013 letter and "partial weight" to his July 23, 2014 statement instead of assigning controlling weight to both opinions. ECF No. 24-2 at 1-7. Because I find that the ALJ erred in his application of the rule to the July 23, 2014 statement, I remand on that basis and do not address the October 30, 2013 letter.

3

### i.     July 23, 2014 Physical Residual Function Capacity Statement

Ms. Sullivan argues that the ALJ erred in ascribing "partial weight" to Dr. Caminear's Physical Residual Function Capacity Statement of July 23, 2014, in which Dr. Caminear opined, *inter alia*, that Ms. Sullivan has "diabetic neuropathy [in] both feet daily," "loss of protective senses," a "history of ulcers and amputation," and trouble with balance; requires a scooter while ambulating; can occasionally lift less than five pounds; can stand and walk for less than one hour in an eight hour work day; and has "standing and walking limitations" that would prevent her from obtaining and retaining work in a competitive work environment for eight hours per day, five days a week. R. 1213-1216.

In deciding how much weight to accord this statement, the ALJ was required to consider the four *Greek* factors. The first *Greek* factor requires an ALJ to consider the "frequency, length, nature, and extent of treatment" while the fourth requires an inquiry into "whether the physician is a specialist." *Greek*, 802 F.3d at 375. The ALJ properly considered both factors, noting that Dr. Caminear "specializes in podiatric surgery and foot and ankle surgery and has a long treatment history with the claimant." ECF No. 16-5 at 107. These factors, though, counsel in favor of ascribing *greater* weight to Dr. Caminear's opinion. 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); *id.* at (c)(2)(ii)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty.").

The second and third *Greek* factors require the ALJ to consider "the amount of medical evidence supporting the opinion" and "the consistency of the opinion with the remaining medical

evidence." *Greek*, 802 F.3d at 375. The ALJ discusses the following inconsistency between Dr. Caminear's opinion and other medical evidence:

> [Dr. Caminear] opined that the claimant could occasionally lift and/or carry less than five pounds and was unable to obtain or retain work due to standing and walking limitations (Id. at 3, 4). This is inconsistent with the treatment notes, which demonstrated that while the claimant had limitations associated with her impairment, her condition improved through treatment. (See Ex. 1F, 4F, 5F, 10F, 12F). Specifically, the ulcers that the claimant has experienced had resolved through treatment and that the claimant had normal cortical functions, a normal gait, and no tremors and there is nothing that would support this restriction (See Ex. 1F, 4F, 10F, 12F).

R. 241.

This reasoning falls short of the ALJ's obligation to put forth "comprehensive" and "good reasons" for assigning partial weight to the opinion. *See Burgess*, 537 F.3d at 129-30. First, treatment notes from several different doctors suggest that Ms. Sullivan's ability to stand and walk is limited not only by ulcers, but by other serious ailments that the ALJ does not even mention. *See, e.g.*, R. 994 (March 19, 2014 chart note from Dr. Caminear noting "loss of protective sensation consistent with diabetic neuropathy," "hammertoe contractures," and two "chronically dislocated" joints); R. 992 (September 3, 2014 note from Dr. Caminear showing "dense diabetic neuropathy" and "[n]ew onset of left foot great toe ulceration"); R. 261-262 (June 10, 2015 report of an MRI taken at Yale New Haven Health showed "severe osteoarthritis," "defect suspicious for osteomyelitis," and "[e]xtensive fatty atrophy of all visualized muscles in the left forefoot"); R. 288-289 (July 2, 2015 inpatient record of a left great toe amputation); R. 1217 (September 16, 2015 chart note from Dr. Caminear noting a "right foot first metatarsal head ulceration" from the prior week); R. 1131 (September 24, 2015 chart note from Dr. D'Aria noting "+1 pitting edema lower extremities"); R. 1219 (October 14, 2015 note from Dr. Caminear noting "evidence of sensory neuropathy with loss of protective sensation"); R. 1148 (nerve conduction study performed by Dr. D'Aria on October 30, 2015 showed

"[a]bnormal polyneuropathy, consistent with [illegible] severe diabetic neuropathy"); R. 1134 (November 5, 2015 chart note from Dr. D'Aria stating there was "numbness to bil[ateral] feet and hands and occasionally down leg").

Second, although the ALJ cited several exhibits showing that Ms. Sullivan's recurring ulcers respond to treatment, he did not address the other problems she had with standing and walking, including those stemming from her diabetic neuropathy. Dr. Caminear's July 23, 2014 opinion makes multiple references to her neuropathy, R. 1213-1216, and it is reasonable to interpret his opinion about her inability to work "due to standing and walking limitations," R. 1216, as incorporating that condition. Thus, the ALJ failed to provide "comprehensive" and "good reasons" for discounting Dr. Caminear's opinion. Third, he "cherry-picked out of the record those aspects of the physicians' reports that favored his preferred conclusion and ignored all unfavorable aspects" without "explaining his choices." *Ardito v. Barnhart*, 2006 WL 1662890 at *5 (D. Conn. May 25, 2006). For instance, he cited Dr. D'Aria's note that Ms. Sullivan "had normal cortical functions, a normal gait, and no tremors" on one occasion, R. 239, but did not cite Dr. D'Aria's notes about "pitting edema" in the lower extremities, R. 1131, "severe diabetic neuropathy," R.1148, or "numbness" in her feet and down her leg, R. 1134.[2] This unexplained selectivity, together with the failure to address the neuropathy, runs afoul of the requirement that the ALJ provide "good reasons."

### ii. Whether Remand is Necessary

Misapplication of the treating physician rule "ordinarily requires remand," but remand is unnecessary "where application of the correct legal principles to the record could lead only to the

---

[2] Further, the ALJ's repeated reliance on treatment notes of Ms. Sullivan's "normal gait" at particular office visits seems to contradict his RFC finding that Ms. Sullivan "requires a scooter to ambulate but can stand without an assistive device." R. 237.

6

same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (internal quotation marks, citations, and alterations omitted); *see also Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Of course, where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration."). Here, it is not clear that the correct application of the treating physician rule to Dr. Caminear's opinion could have led only to one conclusion. Remand is therefore required.

In the July 23, 2014 statement, Dr. Caminear noted that Ms. Sullivan has "diabetic neuropathy in both feet daily" and "[l]oss of protective senses," must use a scooter for prolonged ambulation on all surfaces, can stand and walk less than one hour in an eight hour workday, and is unable to obtain work "due to standing and walking limitations." R. 1213-1216. At the hearing, the vocational expert testified that Ms. Sullivan would be unable to do sedentary work if she could not stand and walk at least two hours of an eight hour day. R. 648. Thus, had the treating physician rule been properly applied, it is possible the ALJ would have assigned greater weight to Dr. Caminear's opinion and thereby reached a different assessment of Ms. Sullivan's capabilities.

Thus, I cannot conclude that application of the proper legal standard could have led only to one conclusion, and remand is required.

### B. Statement by the Unknown Provider

A physical residual function capacity statement was submitted by the Connecticut Orthopedic Specialists on August 11, 2014. R. 1123-1126. Although some of the handwritten entries are difficult to decipher, they appear to mention "serious leg pain due to neuropathy" and to indicate that Ms. Sullivan can stand or walk less than one hour in an eight hour work day, that she can occasionally lift five pounds, and that her pain is "frequently" severe enough to interfere

with the attention and concentration needed to perform simple work tasks. R. 1123-1126. Addressing this statement, the ALJ notes that it "is unclear which physician actually completed this form, as there is no name on the form and the signature is illegible." R. 243. Ultimately, the ALJ assigned "little weight" to this statement, largely for the same reasons he cited in assessing Dr. Caminear's July 23, 2014 statement, i.e., "the ulcers that the claimant has experienced had resolved through treatment and . . . the claimant had normal cortical functions, a normal gait, and no tremors." R. 243. He does not appear to have made any inquiry into the author of this statement despite the fact that the result of such an inquiry may have required him to accord greater, and perhaps controlling, weight to the statement. In addition, his discussion of this statement likewise makes no mention of neuropathy. R. 243.

As a general matter, "it is the rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009) (internal quotation marks, citation, and alterations omitted); *see also Cote v. Berryhill*, 2018 WL 1225543, at *3 (D. Conn., 2018) ("An ALJ is required to seek out additional evidence where there are 'obvious gaps' in the administrative record."). More specifically, the applicable regulations "require an ALJ to seek additional evidence or clarification from the medical source when a report from the medical source contains a conflict or ambiguity that must be resolved to determine whether the claimant is disabled." *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 504 (S.D.N.Y. 2014) (internal quotation marks, citation, and alterations omitted); *see also Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (explaining that when faced with a "remarkably vague" medical opinion, the ALJ should have "[a]t a minimum," "contacted [the doctor] and sought clarification of his report").

In this case, there is no indication that the ALJ contacted Connecticut Orthopedic Specialists to determine who authored the statement, whether that person was a physician, and what that person's treatment relationship with Ms. Sullivan was. Nor is there any evidence of such an inquiry during the hearing. Ms. Sullivan further notes that the ALJ did not ask her counsel to determine who authored the statement. ECF No. 24-2 at 3. Had the statement been authored by a treating physician, the ALJ would have been required at least to provide good reasons for ascribing less than controlling weight, which, for the same reasons set forth above relating to the July 23, 2014 statement, he did not do. As noted, the statement discusses, *inter alia*, Ms. Sullivan's neuropathy and leg pain, R. 1123-1126, which are critical issues in this case. *See infra* Sections III.C and III.D. Therefore, developing the record as to the author of the statement is highly relevant to the ultimate issue of Ms. Sullivan's disability. Because an "ALJ commits legal error when he fails to fulfill his affirmative obligation to develop the administrative record," *Cortes v. Berryhill*, 2018 WL 1392903, at *2 (D. Conn., 2018), and the ALJ did not take any steps to clarify the author of the medical statement, remand is appropriate.

### C. Assessment of Neuropathy at Step Two

The ALJ found that Ms. Sullivan had two severe impairments: diabetes mellitus and obesity. R. 236. He did not find—or even consider—Ms. Sullivan's neuropathy to be a severe impairment. R. 236-237. In responding to Ms. Sullivan's claim that this was error, ECF No. 24-2 at 7, the Commissioner says little more than "Ms. Sullivan fails to show that her neuropathy caused functional limitations that required any greater restriction than what the ALJ included in the RFC finding" and assuming "*arguendo* that it was severe, any error would be harmless because the ALJ considered Ms. Sullivan's neuropathy when assessing her RFC," ECF No. 25-1 at 7 n.1.

"[T]he standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). Given the low bar at step two, and the multiple references to neuropathy in the medical record, a proper evaluation at step two could easily have led to a finding that neuropathy constituted a severe impairment. *See, e.g.*, R. 994 (March 19, 2014 chart note from Dr. Caminear noting "loss of protective sensation consistent with diabetic neuropathy"); R. 992 (September 3, 2014 note from Dr. Caminear showing "dense diabetic neuropathy"); R. 1219 (October 14, 2015 note from Dr. Caminear noting "evidence of sensory neuropathy with loss of protective sensation"); R. 1148 (nerve conduction study performed by Dr. D'Aria on October 30, 2015 showing "[a]bnormal polyneuropathy, consistent with [illegible] severe diabetic neuropathy"); R. 1134 (November 5, 2015 chart note from Dr. D'Aria stating there was "numbness to bil[ateral] feet and hands and occasionally down leg").

Further, the Commissioner's harmless error argument is not persuasive. Although the Commissioner is correct in noting that the failure to identify a severe impairment at step two is harmless error if the ALJ specifically considers the impairment during subsequent steps, *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013), that is not what happened here. To the contrary, the ALJ did not adequately address Ms. Sullivan's neuropathy in other parts of his decision despite multiple references to neuropathy and related symptoms in her medical record. *See supra* Section III.A.i. As noted, his discussion of the opinion evidence includes no analysis of the neuropathy even though it figures in the opinions. Nor is there specific discussion of how the neuropathy affects her functioning. As such, the Court concludes that remand is appropriate.

**D. Evaluation of Neuropathy Under Listing 11.14**

At step three of the proceeding, the ALJ determined that Ms. Sullivan's physical impairments "do not meet or medically equal the criteria of listing 8.04" because "medical records have shown that [her] ulcers have healed through treatment." R. 237. The ALJ did not mention, let alone evaluate, the applicability of listing 11.14 (peripheral neuropathy) in his decision.

Under listing 11.14, peripheral neuropathy is defined as:

A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or

B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following: 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or 2. Interacting with others (see 11.00G3b(ii)); or 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or 4. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. § 404, Subpt. P, App. 1, § 11.14. The Commissioner argues that Ms. Sullivan "presents no evidence demonstrating that the requirements of any listing actually were satisfied." ECF No. 25-1 at 8 n.2. To the contrary, Ms. Sullivan's medical records suggest that her physical impairments could conceivably meet the criteria for listing 11.14. *See, e.g.*, R. 1124 (August 7, 2014 note from unknown physician noting that Ms. Sullivan has "problems with balance when ambulating" "at times"); R. 1213, 1215 & 1216 (July 23, 2014 RFC statement from Dr. Caminear noting that Ms. Sullivan has "problems with balance when ambulating," needs a scooter for even occasional standing and walking, and has "standing and walking limitations"). Ms. Sullivan's neuropathy figured prominently enough in her medical records that the ALJ should have addressed this issue.

When a disability claim is "premised upon one or more listed impairments of Appendix 1, the Secretary should set forth a sufficient rationale in support of his decision to find or not to

find a listed impairment." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). If no rationale is provided and the Court is "unable to fathom the ALJ's rationale in relation to evidence in the record," then remand is appropriate "for further findings or a clearer explanation." *Ibid*. The Court takes no position on whether Ms. Sullivan's physical impairments *actually* meet the criteria under listing 11.14. Rather, the Court notes that its "task is made much more difficult when no express reasoning is given," *Isureal v. Berryhill*, 2018 WL 1409797, at *2 (D. Conn., 2018), and remands because the ALJ failed to address listing 11.14.

**IV.  Conclusion**

For the reasons set forth above, Ms. Sullivan's motion, ECF No. 24, is GRANTED and the Commissioner's motion, ECF No. 25, is DENIED. The case is hereby REMANDED.

IT IS SO ORDERED.

/s/  MICHAEL P. SHEA

Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           November 21, 2018